## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ROBERT EARL BARNES, JR.,**

    **Plaintiff,**

    **v.**　　　　　　　　　　　　　　　**Civil Action No.:  MJM-24-1077**

**J. HENRY,**
**R. BARNES,**
**HETZ,**
**G. FORNEY,**

    **Defendants.**

## MEMORANDUM

Pending is Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment. ECF No. 12.  Although plaintiff Robert Earl Barnes, Jr. ("Plaintiff"), who is incarcerated at North Branch Correctional Institution ("NBCI"), was advised of his right to file a response to the motion and of the consequences of failing to do so, he has not opposed the motion.  *See* ECF No. 13.  No hearing is necessary.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, Defendants' motion, construed as one for summary judgment, shall be granted.

## I.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff claims that in August of 2023, while incarcerated at Western Correctional Institution ("WCI"), he was escorted to his cell from outside recreation by Officer Hetz.  ECF No. 1 at 4.  After he was in his cell, Officers J. Henry and R. Barnes approached his cell and said, "cuff up, you're getting a cell buddy."  *Id*.  Plaintiff states that he asked the officers to "hold-up" because he was cleaning his cell.  *Id*.  Both officers left, escorting the other inmate who was supposed to move into Plaintiff's cell away with them.  *Id*.

Approximately five minutes later, Henry and Barnes returned to Plaintiff's cell and told him, "cuff up, you're going to the property room!"  ECF No. 1 at 4.  Plaintiff states that he complied with the order and, after he was handcuffed behind his back, he was escorted to the property room and placed in the "strip cage."  *Id*.  Both officers then left Plaintiff in the cell.  *Id*.

While Plaintiff was waiting to be told why he was being held in the strip cage and looking to his right, he states that he was "blindsided" from the left by Officer Barnes spraying pepper spray in his face.  *Id*. at 5.  As Officer Barnes deployed the pepper spray, he was shouting "drop the weapon," but Plaintiff claims he had no weapon.  *Id*.

After approximately one minute, Officer Barnes again sprayed pepper spray in Plaintiff's face while he was handcuffed in the strip cage.  *Id*.  Plaintiff alleges that he was sprayed with pepper spray a third time until the can was empty.  *Id*.  Lt. Forney escorted Plaintiff to the shower and then placed him on suicide watch in housing unit 4, B wing, cell 1.  *Id*.

He states that he temporarily lost his vision and was denied any medical treatment.  *Id*.  As relief, Plaintiff seeks "all charges dropped against [him]" and monetary damages of $300,000.  He states that he is suing for defamation of character and excessive force.  *Id*.

**B.    Defendants' Response**

As memorialized in contemporaneously prepared reports, Defendants provide the following statement of events.

On August 29, 2023, Officer Henry escorted inmate Damon Miles to Plaintiff's cell because he was being moved into this cell.  ECF No. 12-3 at 14.  Upon arrival, Officer Henry opened the slot on the cell door to tell Plaintiff he was receiving a cellmate.  *Id*.  Plaintiff "became irritated" and asked "'for what, for what.'"  *Id*.  Officer Henry advised Plaintiff that refusing to accept a cellmate would mean he would receive a disciplinary infraction, but Plaintiff responded

that he did not care. *Id*. When Plaintiff was given a direct order to accept a cellmate, he again refused. *Id*. It was then that Officer Henry noticed that Plaintiff had "water-soaked papers covering the heater, window, and cell light." *Id*. Officer Henry also noticed a "foul odor" coming from the cell. *Id*. Officer Henry escorted Miles to a holding cell and secured him there. *Id*.

Officer Henry asked Officer Barnes to assist him in removing Plaintiff from his cell so it could be cleaned and inspected for damages. ECF No. 12-3 at 15. When Henry and Barnes came to Plaintiff's door, Henry ordered Plaintiff to come to the pass-through slot in the door so he could be handcuffed, but Plaintiff refused to comply. *Id*. Instead, Plaintiff began tearing up the soaked papers, balling them up, and throwing them at the cell door. *Id*. Henry gave multiple orders for Plaintiff to stop throwing the paper at the door and to come to the door to be handcuffed. *Id*. Plaintiff eventually complied and was handcuffed. *Id*.

After Plaintiff came out of his cell, he "became irate, and tried to pull away from [Henry's] hands on escort." ECF No. 12-3 at 15. Henry and Barnes gained control over Plaintiff and escorted him to the property room strip cage. *Id*. Henry then gave Plaintiff an order to step backwards to the pass-through slot so the handcuffs could be removed. *Id*. As Henry removed the handcuff from Plaintiff's right wrist, Plaintiff pulled away forcefully, breaking the handcuff key. *Id*. Plaintiff "spun around, reached towards his waist area with his right hand, pulled out a weapon, and stepped toward the pass-through slot in the cage." *Id*. Officer Barnes immediately deployed pepper spray toward Plaintiff's face to prevent him from reaching through the pass-through slot with the weapon. *Id*. Plaintiff was ordered to drop the weapon and did so as he backed away from the pass-through slot. *Id*. Plaintiff was then ordered to step to the slot again, turn his back to the officers, and allow the right handcuff to be reapplied. *Id*. Plaintiff complied with the order. *Id*.

Henry recovered the weapon from the strip cage floor, and Plaintiff was put back into the strip cage to wait for medical staff to arrive. *Id*. The weapon was a piece of metal, 6.75 inches long, and sharpened to a point. *Id*. The weapon was taken to WCI Operations where it was photographed. *Id*. at 15, 28 (photograph).

The following day, Plaintiff was charged with violating several rules, including: Rule 100 (disruptive act); Rule 101 (assault or battery on staff); Rule 104 (making threats that include use of physical harm); Rule 105 (possess, use or manufacture a weapon); Rule 116 (tampering with, damaging, or destroying security equipment); Rule 312 (interfering with a search), Rule 315 (possession of contraband); and Rule 316 (disobeying an order). ECF No. 12-3 at 20. Plaintiff waived his appearance for the adjustment hearing and entered a plea agreement whereby he would be sentenced to 60 days of segregation and 90 days of lost good conduct credit. ECF No. 12-6 at 2; ECF No. 12-7 at 4. The hearing officer dismissed the Rule 104 charge because it was not supported by the allegations in the Notice of Inmate Rule Violation. ECF No. 12-7 at 4.

The medical report prepared by Tara E. Steward, R.N., indicates that when she arrived to assess Plaintiff for pepper spray exposure, he refused to have his vital signs measured and kept saying all he wanted was a shower. ECF No. 12-3 at 23. She noted, however, that Plaintiff had no visible signs of injury and did not appear to be in any respiratory distress. *Id*. at 24. She observed Plaintiff walking out of the cage and down the hall with his hands cuffed behind his back and his gait was smooth and steady. *Id*.

The incident was investigated by the Department of Public Safety and Correctional Services ("DPSCS") Intelligence & Investigation Division ("IID") Detective Sergeant J. Stanton, after Lt. Benjamin Wagner reported that Plaintiff was discovered to be in possession of a weapon. ECF No. 12-8 at 2, 4. After speaking with staff involved in the incident, Stanton prepared an

Application for Statement of Charges against Plaintiff. *Id*. at 6. The Allegany County District Court Commissioner issued a Criminal Summons charging Plaintiff with possession of a weapon while confined, possession of contraband in a place of confinement, dangerous weapon with intent to injure, second degree assault, concealment of a dangerous weapon, and malicious destruction of property less than $1,000. *Id*. On November 9, 2023, Stanton attempted to serve the summons on Plaintiff, who was now confined at North Branch Correctional Institution ("NBCI"), but Plaintiff would not come out to meet Stanton. *Id*. Stanton took the summons to Plaintiff's cell, introduced himself, and informed him of the reason he was meeting with him. *Id*. Plaintiff repeatedly asked Stanton if he had the legal authority to serve him with a summons. *Id*. at 7. Stanton left a copy with Plaintiff and left the area. *Id*.; *see also* 9-11 (criminal summons).

On June 26, 2024, in the Circuit Court for Allegany County, Plaintiff entered a guilty plea to possession of contraband in a place of confinement in exchange for an agreement by the State to nolle pros the remaining counts. ECF No. 12-9 at 4 (transcript). The State proffered that the case against Plaintiff was based on his actions of brandishing a weapon (a 6.75-inch sharpened piece of metal) while in a strip cage at WCI. *Id*. at 12. Plaintiff was sentenced to serve one-year consecutive to the sentence he was serving. *Id*. at 15.

## II.    STANDARD OF REVIEW

Defendants move to dismiss the Amended Complaint for failure to state a claim or alternatively for summary judgment.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may seek dismissal for "failure to state a claim upon which relief can be granted . . . ." To survive the challenge, the non-moving party must have pleaded facts demonstrating "a claim to relief that is plausible on its face." *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations in the complaint, accepted as true, must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations in the pleading as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (second alteration in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). "[L]iberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*,

6

438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)).  Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (internal quotation marks omitted) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

A court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and arguments made in the parties' briefs.  *See* Fed. R. Civ. P. 12(b)(6), (d); *see also* Fed. R. Civ. P. 10(c).  The court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)); Fed. R. Evid. 201(b).  When the parties present, and the court considers, matters outside the pleadings on a Rule 12(b)(6) motion, the court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

Here, the Court notified Plaintiff that he had the right to respond to Defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond.  ECF No 13.  Moreover, Defendants' motion, which identifies summary judgment as potential relief, provided sufficient notice for Plaintiff to have a reasonable opportunity to present relevant evidence in support of his position.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).  Thus, the Court is satisfied that Plaintiff has been advised that Defendants' motion could be treated as one for

summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion.  The Court will resolve the motion under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in support of its position.  Fed. R. Civ. P. 56(c)(1)(A).  "To avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial."  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment.  *Id.* at 252.  The Court "should not weigh the evidence."  *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is appropriate.  *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party."  *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## III.    DISCUSSION

Defendants assert that Plaintiff failed to exhaust administrative remedies before filing this lawsuit; the defamation claim is not a constitutional claim; there is no sufficient allegation that Hetz and Forney personally participated in the conduct underlying Plaintiff's claims; the use of force was reasonable under the circumstances; and any claim regarding medical care is without merit because Defendants are not medical care providers.  ECF 12-1 at 6–12.  As noted *supra*, Plaintiff has not filed a response.

### A.    Exhaustion of Administrative Remedies

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence.  It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted.  *Woodford v. Ngo*, 548 U.S. 81,

88–89 (2006).  Therefore, a claim that has not been exhausted may not be considered by a court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).  In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust.  *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion") (alteration in original)).  Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215–216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines . . . ." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo*, 286 F.3d at 1024). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] . . . when prison officials prevent inmates from using the administrative process").

DPSCS has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC] . . . ." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the ARP process define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. *See* C.S. § 10-206(a). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

While it is true that Plaintiff withdrew his ARP concerning the incident at issue in this case, under Maryland law, administrative remedies would not be available to Plaintiff for the excessive force claim. There was an investigation into Plaintiff's claims of excessive force by DPSCS IID. ECF 12-8 (IID Report). Where an IID investigation is initiated, the administrative remedy procedure in Division of Correction facilities is unavailable. *See Younger v. Crowder*, 79 F.4th 373, 380 (4th Cir. 2023) ("Under Maryland law, an inmate cannot successfully file an administrative grievance over an event that is the subject of an Intelligence and Investigative Division investigation. If they do, that grievance will automatically be dismissed as procedurally

deficient."), *see also* Md. Code Regs. § 12.02.28.11(B).    Defendants' exhaustion defense is therefore without merit.

### B.    Defamation

It is well established law that defamation does not constitute a cognizable claim of constitutional dimension under 42 U.S.C. § 1983.  *See Paul v. Davis*, 424 U.S. 693, 712 (1976); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 691 n.19 (4th Cir. 2000); *Wildauer v. Frederick Cty.*, 993 F.2d 369, 373 (4th Cir. 1993) ("§ 1983 cannot be used as a vehicle for asserting a claim of defamation."); *Ca'Paldo v. Prez*, 836 F.2d 1342 (Table), *1 (4th Cir. 1988) ("Defamation by a state official, by itself, is insufficient to state a claim under 42 U.S.C. § 1983.").  Here, Plaintiff has not stated a constitutional claim and, to the extent he is attempting to assert a State law claim, he has not alleged facts sufficient to sustain a claim of defamation.

### C.    Hetz and Forney

Defendants assert that the Complaint does not contain sufficient factual assertions to implicate Hetz and Forney in any wrongdoing.  Plaintiff's only mention of Hetz is to say that he escorted Plaintiff inside before any of the conduct he claims amounted to an excessive use of force.  ECF 1 at 4.  Regarding Forney, Plaintiff states that he escorted him to the shower after the incident occurred.  *Id*. at 5.

To survive summary judgment, a § 1983 claim must include an allegation of personal involvement by each named defendant in the alleged constitutional violation.    "At summary judgment, a plaintiff must identify evidence that each individual defendant acted (or failed to act) with a culpable state of mind."  *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023) (citing *Taylor v. Riojas*, 592 U.S. 7, 9 (2020); *see also Moss v. Harwood*, 19 F.4th 614, 624-25 (4th Cir. 2021);

*Danser v. Stansberry*, 772 F.3d 340, 349–50 (4th Cir. 2014) (defendant-specific evidence is required to survive summary judgment).

Here, Plaintiff was required to provide an "officer-by-officer" explanation as to how each Defendant participated in unconstitutional conduct or failed to intervene on his behalf. Hetz and Forney are merely alleged to have escorted Plaintiff before and immediately after the use of force against him. They are entitled to summary judgment in their favor.

        **D.**       **Eighth Amendment Use of Excessive Force**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The court must consider the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

The undisputed facts establish that Officers Henry and Barnes reasonably feared that Plaintiff intended to inflict bodily harm on one or both of them when he broke the handcuff key, spun around, and retrieved a sharpened metal weapon from his waistband. The use of pepper spray to intervene and stop Plaintiff's attack was a good-faith effort to restore discipline and was the

minimum amount of force required to achieve that end.  Henry and Barnes are entitled to summary judgment in their favor based on the undisputed record before the Court.

### E.        Eighth Amendment Denial of Medical Care

The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). Beyond its proscription of cruel and unusual punishment, the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement." *Makdessi v. Fields,* 789 F.3d 126, 132 (4th Cir. 2015) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). "[T]he government and its officials are not free to let the state of nature take its course," but must act "to ensure the minimal civilized measure of life's necessities." *Id.* at 133. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (internal quotation marks and citation omitted). This indifference encompasses instances of "prison guards . . . intentionally denying or delaying access to medical care." *Id.* at 104–05.

Correctional personnel typically are not liable for deliberate indifference when they allow the medical staff to make decisions about medical care.  *See Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (noting that a warden was entitled to rely upon the health care providers' expertise); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (stating that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001) ("Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment.").

Plaintiff's sole allegation as to medical attention is: "Medical treatment was denied!"  ECF 1 at 5.  To the extent this was meant to state a claim, it falls far short of a cognizable Eighth Amendment claim for denial of medical care.  The record before the Court establishes that medical personnel observed and offered medical services after the incident at issue, and Plaintiff refused treatment.  Accordingly, Defendants are entitled to summary judgment on any claim for denial of medical care.

IV.    **CONCLUSION**

For the reasons stated above, the motion filed by Defendants is construed as a motion for summary judgment and shall be granted.  A separate Order follows.

  3/10/25
Date                                                         Matthew J. Maddox
                                                             United States District Judge

15